IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MATISHA WARD,** Individually, and On Behalf of the Estate of Antoinette Brown, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. **3:18-CV-1574-L** |
| **CITY OF DALLAS; MARIA CARDOSO; VERONICA BARRIOS CARTER; CHARLES CARTER; and JOHN DOES 1-3,** | § § § § § | |
| Defendants. | § § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court is Defendant City of Dallas's (the "City") Partial Motion[*] to Dismiss Plaintiff's Third Amended Complaint ("Motion") (Doc. 38), filed December 6, 2019.  After carefully reviewing the Motion, Plaintiff Matisha Ward's ("Ms. Ward" or "Plaintiff") response, the City's reply, record, Plaintiff's Third Amended Complaint, and the applicable authority, the court **grants** Defendant City of Dallas's Partial Motion to Dismiss Plaintiff's Third Amended Complaint.

**I.      Procedural and Factual Background**

This action arises from an incident in which several dogs brutally attacked Ms. Antoinette Brown ("Ms. Brown") at approximately 4:42 a.m. on May 2, 2016, in the City of Dallas, Texas. Ms. Brown was bitten over 100 times, sustained severe injuries, and died as a result of those injuries on May 9, 2016.  According to Plaintiff's Third Amended Complaint, Ms. Brown "was

---

[*] *Once again, the City filed a document that is labeled as a "Partial Motion to Dismiss."  It is impossible to file a "partial motion."  The correct appellation should be "Motion for Partial Dismissal," "Motion to Dismiss in Part," or "Motion to Dismiss Plaintiff's State Law Claim."*

killed [on property] possessed, owned occupied, or controlled by the City." Pl.'s Third Am. Compl. ¶ 81.  The attack occurred at 3300 Rutledge Street, a vacant lot owned by the City. According to Plaintiff, the City owned several other lots in the area where the dog attack occurred. *Id*. ¶ 15.

Ms. Matisha Ward, Ms. Brown's daughter and Plaintiff herein, originally filed this action in the 191st Judicial District Court of Dallas County, Texas, on May 3, 2018, asserting claims against the City of Dallas (the "City"); Maria Cardoso ("Ms. Cardosa"); Veronica Barrios Carter and Charles Carter (the "Carters"); and John Does 1-3. Ms. Ward filed an amended petition in state court the following day.

The City removed the action to federal court on June 15, 2018, on the basis of federal question jurisdiction.  After removal, on December 20, 2018, Ms. Ward filed Plaintiff's Second Amended Complaint ("Second Amended Complaint") (Doc. 13).  In the Second Amended Complaint, Ms. Ward sued pursuant to 42 U.S.C. § 1983 and brought claims for denial of due process of law and equal protection of the laws against the City pursuant to the 14th Amendment to the United States Constitution, as well as claims for a premises defect and special defect under the Texas Tort Claims Act ("TTCA"); negligence per se and negligence against Ms. Cardosa and John Does 1-3; and negligence against the Carters.  The City contended that Plaintiff had failed to allege a plausible claim that would fall within the City's waiver of immunity under the TTCA and urged the court to dismiss Plaintiff's state tort claims of premises defect and special defect against it.

Plaintiff's claims in the Second Amended Complaint under the TTCA were based on the alternative theories of special defect and premises defect.  Ms. Ward conceded that "the dangerous condition alleged [in her Complaint] is likely not a special defect under the law."  Pl.'s Resp. to

**Memorandum Opinion and Order – Page 2**

City's Mot. to Dismiss 6.  The court was not sure what Plaintiff was describing as the "dangerous condition," but it assumed that she was contending that the allegedly dangerous condition was that the City allowed the dogs to congregate on a vacant lot owned by it.  From what the court could ascertain, Plaintiff acknowledged that her special defect claim, or at least a portion of it, was not viable.  Because of the uncertainty, the court allowed Plaintiff to replead this claim and state it with more specificity, as Ms. Ward did not address the arguments made by the City.

The court granted Defendant City of Dallas's Rule 12(b)(6) Partial Motion to Dismiss the Plaintiff's State Tort Claims Against It (Doc. 17); however, it allowed Plaintiff to replead her special defect and premises defect claims.  In allowing Ms. Ward to replead, the court stated the following:

> [Ms. Ward] must adhere to the standard herein set forth.  The court agrees that Plaintiff's pleadings regarding her TTCA claims are deficient essentially for the reasons stated by the City.  The City, therefore, has put Plaintiff on notice regarding the deficient allegations regarding her claims under the TTCA, and she must squarely address these deficiencies.  Further, Plaintiff must set forth in her amended pleading what the special defect is and why it is a viable claim under Texas law.  Finally, Plaintiff must plead factual allegations to show that the City is not entitled to government immunity, as she did not fully engage this argument in her response to the motion for partial dismissal.  Ms. Ward shall file her amended pleading by October 28, 2019.  If she fails to plead in accordance with the court's directive, the court may dismiss the TTCA claims pursuant to Rule 12(b)(6), or pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute or comply with a court order.

Ct.'s Mem. Op. & Order 6 (Doc. 30, Sept. 30, 2019).  As reflected later in this opinion, Ms. Ward did not include a special defect claim in Plaintiff's Third Amended Complaint.  As no special defect claim is set forth in Plaintiff's live pleading, such claim is not before the court and cannot serve as a basis for any kind of relief for Ms. Ward.

## II.        Standard for Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any

documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).  In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can

be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

## III.    Discussion

### A.    Plaintiff's State Law Claim

In addition to federal claims brought pursuant to 42 U.S.C. § 1983, Plaintiff also brings a state law claim against the City under the TTCA.  Specifically, Ms. Ward alleges as follows in this regard.

> 80. The City of Dallas is a governmental unit subject to the provisions of the Texas Torts Claims Act and as such has waived immunity for the claims in this action pursuant to TEX. CIV. PRAC. & REM. CODE §§ 101.021(2); 101.0215; and 101.025.

> 81. The property on which Ms. Brown was killed was possessed, owned, occupied, or controlled by the City. The property contained premises defects, in the form of dangerous dogs that congregated on the lots[,] and these defects posed an unreasonable risk of harm to the public at large as well as to Ms. Brown specifically.

> 82. The City had actual and constructive knowledge of the danger these conditions posed, because residents in the area made numerous complaints to the City about the dogs and the illegal dumping that attracted the dogs to the property.

> 83. Ms. Brown did not have actual knowledge or constructive [knowledge] of the danger the conditions posed.

> 84. The City breached the duty of ordinary care by not adequately warning the public of the dangers of the condition and by failing to make the conditions reasonably safe, despite the fact that it had knowledge of both the dogs, the illegal dumping, and the disproportionate number of loose dogs in South Dallas. Furthermore, the City could have easily warned residents, as it has done since Ms. Brown's death, in the form of signs around the neighborhood putting people on notice that loose dogs are in the area.

85. The City's breach proximately caused Ms. Brown[']s injuries and resulting death.

86. The City of Dallas is a governmental unit subject to the provisions of the Texas Torts Claims Act and as such has waived immunity for the claims in this action pursuant to TEX. CIV. PRAC. & REM. CODE §§ 101.021(2); 101.0215; and 101.025.

87. Ms. Brown engaged in a recreational activity on the premises.

88. The property on which Ms. Brown was killed was possessed, owned, occupied, or controlled by the City. The property contained premises defects, and these defects posed an unreasonable risk of harm to the public at large as well as to Ms. Brown specifically.

89. The City injured Ms. Brown through gross negligence, malicious intent, or bad faith.

90. The City's breach proximately caused Ms. Brown[']s injuries and resulting death.

91. The City, if a private person, would be liable for this breach under Texas law.

Pl.'s Third Am. Compl. 20-22, ¶¶ 80-91.

### B.   Parties' Arguments

#### 1.   The City

The City contends that it is entitled to a dismissal of Ms. Ward's state law premises defect claim pursuant to Rule 12(b)(6) because she has failed to set forth a plausible claim that falls within the City's waiver of immunity under the TTCA.  According to the City, a governmental unit owes a plaintiff only the duty that it would owe to a licensee on private property, unless the person seeking relief pays for the use of the premises.  The City contends that Ms. Brown did not pay for the use of the premises.  The City also contends that it has governmental immunity, pursuant to § 101.0215(33) of the TTCA, because Plaintiff's allegations against it involve animal control, which is a governmental function.  Finally, the City contends that it cannot be liable to Ms. Ward because she has not set forth sufficient factual allegations in her pleadings that the City had actual notice

of the allegedly dangerous condition prior to the dog attack and that these allegations are insufficient for the court to, therefore, reasonably infer that it could be liable for the allegedly wrongful conduct.

### 2.      Plaintiff's Arguments

Ms. Ward disagrees with the City's argument regarding lack of actual notice and contends that the City fails to acknowledge that it was put on notice by complaints of citizens and newspaper articles regarding the stray dog problem in "South Dallas" years *before* Ms. Brown was attacked on May 2, 2016.  Plaintiff, therefore, contends that this information put the City on actual notice that the City lots "were known to be havens for loose and aggressive dogs."  Plaintiff further contends that the loose and stray dogs were attracted to the City lots because of the illegal dumping that occurred on them.  Plaintiff urges the court to deny the City's Motion.

In its reply, the City argues that loose dogs and illegal dumping are not conditions of the premises in question.  The City, thus, argues that loose dogs and illegal dumping cannot be used to state a claim of premises defect against it.  Finally, the City reasserts its argument that Plaintiff fails to set forth sufficient allegations alleging actual notice regarding the allegedly dangerous condition on the City lot in question.

### C.      Analysis

### 1.      Governmental Immunity Standard

The Texas Supreme Court recently summarized the parameters of immunity under the TTCA.  To ensure that nothing is lost in application or interpretation, rather than paraphrase the apposite language, the court sets forth the entire summary:

> "Sovereign immunity protects the state and its various divisions, such as agencies and boards, from suit and liability, whereas governmental immunity provides similar protection to the political subdivisions of the state, such as counties, cities, and school districts." *Travis Cent. Appraisal Dist. v. Norman*, 342

> S.W.3d 54, 57-58 (Tex. 2011).   Tarrant Regional Water District is a political
> subdivision of the State of Texas.  *See* Tex. Water Code § 51.149(e).  It is therefore
> generally immune from suit and liability absent a waiver of its immunity.  *See*
> *Gragg*, 151 S.W.3d at 550.
>
> The Legislature may waive immunity by statute or legislative resolution.
> *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997).  The Texas Tort
> Claims Act creates a limited waiver of immunity.  Tex. Civ. Prac. & Rem. Code §§
> 101.001-.109.  The Act waives sovereign and governmental immunity, subject to
> restrictions, in the following three areas: "use of publicly owned automobiles,
> premises defects, and injuries arising out of conditions or use of property."  *Tex.
> Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004) (quoting
> *County of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002)); Tex. Civ. Prac. &
> Rem. Code §§ 101.021-.022.

*Tarrant Reg'l Water Dist. v. Johnson*, 572 S.W.3d 658, 663-64 (Tex. 2019).

As previously noted by the court, the state claim asserted by Ms. Ward is one for a premises

defect, and there is a limited waiver of liability for premises defect claims against a governmental

entity under the TTCA.

> The Tort Claims Act waives immunity for "personal injury and death so
> caused by a condition or use of tangible personal or real property if the
> governmental unit would, were it a private person, be liable to the claimant
> according to Texas law."  Tex. Civ. Prac. & Rem. Code § 101.021(2).  A premise-
> defect claim is a common instance of a claim for "injury and death caused by a
> condition … of real property."  *Id.*; *see State v. Shumake*, 199 S.W.3d 279, 281
> (Tex. 2006).  If the claim "arises from a premise defect, the governmental unit owes
> to the claimant only the duty that a private person owes to a licensee on private
> property[, unless the claimant pays for the use of the premises.]"  Tex. Civ. Prac.
> & Rem. Code § 101.022(a).  The duty owed to a licensee on private property
> requires that "a landowner not injure a licensee by willful, wanton or grossly
> negligent conduct, and that the owner use ordinary care either to warn a licensee
> of, or to make reasonably safe, a dangerous condition of which the owner is aware
> and the licensee is not."  *Sampson*, 500 S.W.3d at 385 (quoting *State Dep't of
> Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992)).

*Id.* at 664.  As Ms. Ward does not allege that Ms. Brown paid for the use of the property where

she was attacked, the only duty the City owed Ms. Brown is that owed to a licensee.

**Memorandum Opinion and Order – Page 9**

To defeat liability for a premises defect claim and show that governmental immunity has been waived, a licensee must plead facts from which the court can reasonably infer each of the following:

(1)      a condition of the premises created an unreasonable risk of harm to the licensee;
(2)      the owner actually knew of the condition;
(3)      the licensee did not actually know of the condition;
(4)      the owner failed to exercise ordinary care to protect the licensee from danger;
(5)      the owner's failure was a proximate cause of injury to the licensee.

*State Dep't of Highways v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992) (citations omitted).

The City contends that it did not have *actual* notice of the alleged premises defect at the time of the fatal dog attack.  The court agrees and, therefore, the City retains its governmental immunity.

A city does not waive its entitlement to governmental immunity unless it has *actual* knowledge of the allegedly dangerous condition or premises defect at the time of the incident.  *City of Corsicana v. Stewart*, 249 S.W.3d 412-13 (Tex. 2008) (citations omitted).  Waiver of immunity does not occur because of the "mere possibility that a dangerous condition c[ould] develop over time."  *Id*. (citations omitted).  Plaintiff's allegations of correspondence to the City and newspaper articles regarding loose and stray dogs, prior to the dog attack that killed Ms. Brown, simply do not support "directly or indirectly" that the City actually knew that the dogs were congregating at 3300 Rutledge at the time they attacked Ms. Brown at 4:42 a.m. on May 2, 2016.

In *Stewart*, a car stalled at a low-water crossing that had been flooded because of heavy rain.  The father left his two children in the car and went to seek help.  When the father returned, the car had been swept away by the flooding, and the two children drowned.  *Id*.  In *Stewart*, the City of Corsicana was sued because it: (1) knew that a particular road crossing tended to flood or

sometimes flooded during heavy rains at the low-water crossing prior to the tragic accident, and (2) knew that it was raining hard on the night of the tragic accident. The Texas Supreme Court held that the City of Corsicana did not have "actual knowledge of the dangerous condition at the time of the accident" and that governmental immunity was not waived. *Id*. at 413. In *Stewart*, no direct evidence was presented that "the City knew the crossing was flooded prior to the accident." *Id*. at 414. Likewise, Plaintiff sets forth no allegations that support a reasonable inference that the City actually knew the dogs were congregating in the 3300 block of Ruthledge prior to the attack. The court determines that the facts of this case are sufficiently analogous to those of *Stewart*, and concludes that *Stewart* controls the disposition of this case and that the governmental immunity of the City is not waived.

The City also argues that loose, aggressive dogs and illegal dumping are not "conditions of the premises." The court, for the reasons that follow, agrees.

As set forth by the court in *City of San Antonio v. Butler*:

> The TTCA waives immunity for claims arising out of a condition of real property, in other words, a premises defect. *See Cobb v. Tex. Dept. of Criminal Justice*, 965 S.W.2d 59, 62 (Tex. App.—Houston [1st Dist.] 1998, no pet.); *see also* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021(2), 101.022 (Vernon 1997). Because the TTCA does not define "premises liability," courts have looked to its ordinary meaning. *See Cobb*, 965 S.W.2d at 62. "'Premises' is defined as a building, its parts, grounds, and appurtenances." *Id*. "A 'defect' is defined as an imperfection, shortcoming, or 'want of something necessary for completion.'" *Id*.; *see also Vongphachanh v. City of Dallas*, No. 05-02-00566-CV, 2002 WL 31247974, at *3 (Tex. App.—Dallas October 8, 2002, no pet. h.) (not designated for publication) (citing *Cobb*). Thus, to make a claim based on a condition of real property, a plaintiff must complain of something defective or inadequate about the property itself. *Vongphachanh*, 2002 WL 31247974, at *3. Allegations that a plaintiff was injured by persons "purposefully misusing or misbehaving on the [property]" do not give rise to a claim for a premises defect under the TTCA. *Id*. "Property does not cause injury if it does no more than furnish the condition that makes the injury possible." *Archibeque v. North Tex. State Hosp.-Wichita Falls Campus*, 115 S.W.3d 154, 159 (Tex. App.—Fort Worth 2003, no pet. h.); *see Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex. 1995).

**Memorandum Opinion and Order – Page 11**

131 S.W.3d 170, 179-80 (Tex. App.—San Antonio 2004, pet. denied).

Ms. Ward sets forth no allegations against the City that the lot itself where the dog attack occurred was in any way "defective" or "inadequate."  Moreover, at most, the lot owned by the City provided or furnished the condition that made the injury possible—that is, the loose, aggressive dogs and illegal dumping; however, this is insufficient as a matter of law to state a premises defect claim against the City and serves as another basis for holding that the governmental immunity of the City has not been waived.  Therefore, Ms. Ward fails to state a claim upon which relief can be granted against the City.

Finally, the case of *Vongphachanh v. City of Dallas*, 2002 WL 31247974, *1 (Tex. App.—Dallas Oct. 8, 2002, no pet.) (mem. op., not designated for publication), provides insight as to why governmental immunity is not waived for the City.  In *Vongphachanh*, a motorist was struck by another motorist engaged in a drag race.  The struck motorist asserted a premises defect claim, stating that the area where the drag racing took place was a "specific hazardous road condition" on the streets of Dallas and that the City knew about the dangers or hazards posed by the illegal drag racing.  *Id.* at *3.  The court held that persons drag racing on the streets of the City did not constitute a premises defect.   *Id.* (citation omitted).  In other words, there was no flaw or imperfection in the streets, and the injured motorist was actually injured because the other individuals were "purposefully misusing the streets or misbehaving on the streets."  *Id.*  In the case before the court, Plaintiff has not set forth any allegations that there were any defects, imperfections or flaws in the lot itself where the dog attack occurred.  For these reasons, Ms. Ward fails to set forth allegations that the loose, aggressive dogs and illegal dumping constituted a premises defect in the lot where the attack occurred, and, therefore, the City's governmental immunity remains undisturbed.

**Memorandum Opinion and Order – Page 12**

## IV.    Amendment of Pleadings

In response to the City's Motion, Plaintiff did not request to amend her pleadings in the event the court determined that she failed to state a claim.  The provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states "[t]he court should freely give leave when justice so requires" is not without limitation.  The decision to allow amendment of a party's pleadings is within the sound discretion of the district court.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp*., 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc*., 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

As Plaintiff has amended at least three times, the court determines that she has stated her "best case," and allowing any further amendment would unnecessarily delay the resolution of this action.  Moreover, as noted, Ms. Ward did not request to amend her pleadings, and "[a] party who neglects to ask the district court to amend cannot expect to receive such dispensation from the court of appeals." *United States v. Del-Jen, Inc.*, 747 F. App'x 216, 221 (5th Cir. 2018) (footnote and citation omitted).  For these reasons, the court declines to allow any further amendment of pleadings.

## V.    Conclusion

For the reasons herein stated, the court **grants** Defendant City of Dallas's Partial Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 38).  Accordingly, the court **dismisses with prejudice** Plaintiff's premises defect claim against the City.

As a final procedural matter, the City requests the court to allow it 14 days from the date of this opinion to file a responsive pleading regarding the remaining federal claims. The City misapprehends Federal Rule of Civil Procedure 12(a)(4), as it only filed a motion to dismiss Plaintiff's state law claims, not Plaintiff's federal claims. In other words, a responsive pleading should have been filed regarding the federal claims within 14 days after Plaintiff's Third Amended Complaint was filed on November 4, 2019, unless the court extended the date. In any event, the Fifth Circuit frowns on defaults and default judgments, and the court **directs** the City to file a responsive pleading, not a Rule 12(b)(6) motion, by **December 14, 2020**.

**It is so ordered** this 30th day of November, 2020.

Sam A. Lindsay
United States District Judge